# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------   X
KENNETH COLE PRODUCTIONS (LIC), INC.              :
and KENNETH COLE PRODUCTIONS, INC.                :
                                                  :     Case No. 08-cv-5218-
      Plaintiffs,                                 :     AKH
                                                  :
         v.                                       :     ECF CASE
                                                  :
REACTION and MATTHEW CHO,                         :
                                                  :
      Defendants.                                 :
------------------------------------------------   X
```

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR CONTEMPT

Plaintiffs Kenneth Cole Productions (LIC), Inc. and Kenneth Cole Productions, Inc. ("Plaintiffs") by and through their attorneys, hereby submit this memorandum of law in support of their Motion for Contempt against Defendants Reaction and Matthew Cho ("Defendants").

## I.    PRELIMINARY STATEMENT

Plaintiffs reluctantly bring this motion to hold Defendants in contempt as a last resort to protect their valuable trademark rights and related good will and reputation. Indeed, Plaintiffs have repeatedly attempted to avoid the need for Court intervention, both before the filing of the complaint and before the filing of this motion. Defendants simply ignored Plaintiffs' correspondence before the complaint was filed. And in response to Plaintiff's correspondence after the Court entered the order resolving the action, Defendants have repeatedly and blatantly lied about their compliance with the

Court's order and their ongoing infringement.  Thus, to put an immediate and permanent stop to the infringement of Plaintiffs' rights and the violations of this Court's order, Plaintiffs have no choice but to bring this motion for contempt.

## II.      BACKGROUND AND FACTUAL BASIS FOR CONTEMPT

Plaintiffs own or license the REACTION and RXN trademarks for use in connection with clothing and a wide assortment of other goods.  Plaintiffs first learned of Defendants' infringing activities at a fashion industry trade show in New York City, where Defendants, operating under the name REACTION, displayed and offered for sale REACTION branded women's clothing.  Thereafter, through a series of written communications, Plaintiffs asked Defendants to cease all use of the REACTION and RXN trademarks.  Specifically, Plaintiffs sent three separate cease and desist letters to Defendants, each of which asked only that Defendants discontinue use of Plaintiffs' marks. Declaration of Robert Golden ("Golden Declaration"), Exhibits 3 – 5. Defendants, nevertheless, ignored Plaintiffs' efforts to resolve this matter without resort to judicial process.

After confirming that Defendants were in fact selling women's clothing under the REACTION and RXN trademarks (by purchasing such goods via an on-line retailer) and, after giving Defendants notice of their intention to file suit in the last of their aforementioned cease and desist letters, on June 6, 2008 Plaintiffs filed this action for trademark infringement and duly served Defendants with the summons and complaint.

Defendants did not bother to file a response to the Complaint.  Nevertheless, Plaintiffs contacted Defendants in an attempt to negotiate a resolution to the dispute

without resort to the default judgment procedure. Plaintiffs and Defendants agreed to the terms of a Consent Judgment, Order and Permanent Injunction (the "Injunction"). Defendants executed the Injunction on August 3, 2008 and this Court issued the Injunction on August 5, 2008. A copy of the Injunction is annexed to the Memorandum for the Court's reference. Paragraph 6 of the Injunction explicitly vested this Court with continuing jurisdiction over the enforcement of the Injunction.

By letter dated August 6, 2008, delivered by overnight courier, Plaintiffs provided Defendants with a copy of the Injunction as "so ordered" by the Court, and further advised that Plaintiffs expected Defendants' full compliance with the Injunction. A copy of this letter is attached to the accompanying Declaration of Robert Golden ("Golden Declaration") as Exhibit 6. By letter dated August 12, 2008, Plaintiffs reminded Defendants of certain of their immediate obligations under the Injunction, namely the requirements (under paragraph 4 of the Injunction) to deliver to Plaintiffs all goods and other materials bearing the infringing trademarks, to notify Defendants' suppliers and customers of the Injunction, and to provide Plaintiffs with an accounting of all past sales of the infringing goods. Golden Declaration, Exhibit 7.

Rather than comply with the terms of the Injunction as set forth in Plaintiffs' August 12th letter (and the Injunction itself), Defendants responded by letter dated August 15th, representing that they had "destroyed all labels, packaging, catalogs, documents, and everything else . . . . " that bore the infringing marks. Golden Declaration, Exhibit 8. After additional correspondence from Plaintiffs (Golden Declaration, Exhibit 9), Defendants again claimed that they destroyed all goods and materials bearing the infringing marks. Golden Declaration, Exhibit 10.

Suspicious that Defendants were being evasive and were not complying with the Injunction, Plaintiffs retained the services of Trademark Associates of NY, Ltd. ("TA"), a well-known trademark investigative firm, to determine whether Defendants were still using the infringing marks. As detailed below, TA's investigation revealed that, even after the entry of the Injunction, Defendants continue to do business as if the Injunction did not exist by displaying and offering for sale REACTION and RXN branded goods, advertising products bearing the REACTION and RXN marks through Internet outlets, operating under the name REACTION, and using REACTION signage and business forms. Declaration of Stephen Ward ("Ward Declaration") and Exhibit 1 thereto. Defendants apparently have no intention of stopping the infringing activities any time soon; an employee of Defendants represented to TA that Defendants were taking delivery of a new shipment of REACTION branded clothing within the next few weeks. Id.

In sum, Defendants have ignored this Court's order, almost in its entirety. Defendants continue to use the infringing trademarks and, when asked about their compliance with the injunction, have repeatedly and blatantly lied. An order holding Defendants in contempt and awarding Plaintiffs appropriate damages and enforcement is warranted.

## III.    STANDARDS REGARDING CONTEMPT IN CIVIL CASES

The standards for civil contempt are well-settled. "A Court may hold a party in civil contempt only if there is a clear and unambiguous order, noncompliance is proved clearly and convincingly, and 'the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Drywall Tapers and Pointers*

*of Greater New York, Local 1974 of I.B.P.A.T. AFL-CIO et al. v. Local 530 of Operative Plasterers and Cement Mason International Association,* 889 F.2d 389 (2d Cir. 1989), citing *Powell v. Ward,* 643 F.2d 924 (2d Cir. 1981). Here, the Injunction is clear and unambiguous, the proof of non-compliance is not only clear and convincing, but overwhelming, and Defendants have made no effort whatsoever to comply with its non-monetary provisions - rather they have lied about their compliance while continuing business as usual.

The relevant (for purposes of this motion) portions of the Injunction are clear and unambiguous:

3.  Defendants and their agents, officers, directors, servants, employees, their successors and assignees, and all others in active concert or participation with Defendants, including resellers and retailers of Defendants' Infringing Goods [terms with initial capitals are defined earlier in the Injunction] immediately and permanently enjoined from directly or indirectly:

    A.  Using Plaintiffs' Trademarks, the Infringing Trademarks, or any other marks or dresses which are similar to or are colorable imitations of Plaintiffs' Trademarks, alone or as a part of or together with any other designs, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design, in connection with the sale, offering for sale, advertising, exhibiting at trade or similar shows, distributing or promoting of Goods, all products related to the Goods, and/or any business engaged in the manufacture, importation, distribution, offer for sale, advertisement, promotion, and/or sale of Goods; . . . .

4.  Defendants are further Ordered to:

    A.  Immediately deliver to Plaintiffs, under oath and for destruction, all clothing, labels, packaging, wrappers, receptacles, containers, advertisements, promotional materials, printing devices, molds, business forms, catalogs, price sheets and/or all of the things in the possession, custody, or control of Defendants, which are or

can be used to create and/or display the Infringing Marks and/or any name, mark or dress which is similar to and/or a colorable imitation of Plaintiffs' Trademarks, alone or together with any other suffix, prefix, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design in connection with the manufacture, distribution, sale, offer for sale, advertisement or promotion of Defendants' clothing products and/or any clothing or footwear products related thereto; . . .

D.   Immediately notify each of their past and present commercial associates, suppliers and customers, including manufacturers, wholesalers, and retailers, of this Consent Judgment, Order, and Permanent Injunction; and provide Defendants with copies of such notifications; and

E.   Immediately provide Plaintiffs with an accounting of all commercial associates, suppliers and customers, including manufacturers, wholesalers, and retailers, to whom products bearing the Reaction Trademarks were sold or who otherwise played any role whatsoever in such products, including quantities, dates of sale or other involvement, and contact details; . . . .

Stated otherwise, this Court ordered Defendants immediately and permanently to stop using the REACTION and RXN marks (¶ 3A), immediately to deliver Plaintiffs all goods and other materials bearing the trademarks (¶ 4A), immediately to notify their suppliers and customers of the Injunction (¶ 4D), and immediately to provide Plaintiffs with an accounting of all past sales of the infringing goods, including the identity of Defendants' suppliers and customers (¶ 4E).  Defendants have failed to comply with each of these obligations.

Despite repeated requests, Defendants have not provided Plaintiffs with any goods or other materials bearing the infringing trademarks.  Despite repeated requests, Defendants have not provided Plaintiffs with any information regarding its sales, suppliers or customers.  Instead, Defendants have merely offered, by way of letters, the

blanket assertion that they destroyed "everything" relating to the infringing marks. Golden Declaration, ¶¶ 6 – 10 and Exhibits 6 – 10 thereto.

Thus, the violation of paragraph 4E of the Injunction is clear from Defendants' lack of action. Defendants were required to provide information yet, despite repeated requests (in addition to the direct Court Order contained in the Injunction), Defendants have refused to do so. There is no credible argument Defendants can make that they have been reasonably diligent or energetic in their attempts to comply with paragraph 4E – on the contrary, they have made no attempt to comply.

The results of the investigation commissioned by Plaintiffs and conducted by TA establish clearly and convincingly that Defendants have violated paragraphs 3A and 4A. Defendants are still using the REACTION and RXN trademarks on store signage, on infringing goods, on business cards and stationary, as part of their email address, and on the Internet to sell the infringing goods.[1] Ward Declaration and Exhibit 1 thereto.

---

[1] To the extent Defendants may question the propriety of using an investigator to determine compliance with the Injunction, we note that the courts in the Second Circuit have repeatedly and consistently approved the use of investigators and the use of clandestine investigative techniques. *E.g., Gidatex, S.r.L v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 124 (S.D.N.Y. 1999) ("In the instant case, enforcement of the trademark laws to prevent consumer confusion is an important policy objective, and undercover investigators provide an effective enforcement mechanism for detecting and proving anti-competitive activity which might otherwise escape discovery or proof. . . . Thus, reliable reports from investigators posing as consumers are frequently recognized as probative and admissible evidence in trademark disputes. *See, e.g., Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 921-922 (S.D.N.Y. 1992), *aff'd*, 987 F.2d 91, 95-96 (2d Cir. 1993) (evidence of investigators' interviews with non-party sales clerks admitted to show "passing off" and actual confusion among consumers between "Ikon" and Nikon cameras); *see also Louis Vuitton S.A. v. Spencer Handbags Corp.*, 597 F. Supp. 1186, 1188 (E.D.N.Y. 1984), *aff'd*, 765 F.2d 966 (2d Cir. 1985) (affirming permanent injunction issued after considering secretly recorded videotape of defendants' principals meeting with undercover investigator hired by plaintiff to discuss counterfeiting scheme); *Union Carbide v. Ever Ready, Inc.*, 531 F.2d 366, 384 (7th Cir. 1976)(overturning district court's exclusion of testimony in trademark infringement trial of undercover "shopper" sent by plaintiff into department store to purchase defendant's goods)."

As detailed in the Ward Declaration, Defendants continue to: (1) display and offer for sale in their store clothing items that bear "RXN" labels sewn on the inside of the garments and "REACTION" tags attached to the outside of the garments; (2) promote the sale of presumably infringing goods at the website www.fashiongo.net/reaction on it, with the email address, reaction@fashiongo.net; (3) promote and presumably use the reactionwear@hotmail.com and reaction@fashiongo.net email addresses; (4) offer for sale and sell REACTION and/or RXN branded goods via the website www.trendbytes.com; (5) display a large "REACTION" sign above the entrance door to their store; (6) display four large "REACTION" signs on the front glass window panels of their store; and (7) retain and distribute business cards that bear the "REACTION" trademark in large letters.

Defendants have made no effort whatsoever to comply with paragraphs 3A or 4A of the Injunction. Indeed, it appears that Defendants did not alter their business practices at all in response to the Injunction. To the contrary, Defendants have repeatedly and actively attempted to conceal their non-compliance by misrepresenting to Plaintiffs that they had destroyed all infringing materials. Golden Declaration, Exhibits 8 and 10 (letters from Defendants). In light of these deliberate misrepresentations, any claims of innocence or mistake ring hollow.

The requirements for holding Defendants in civil contempt, as established by *Drywall Tapers, supra*, are all met under the facts detailed above and in the accompanying declarations. [2]

---

[2]  Plaintiffs will comply with the provisions of Local Rule 83.9, by serving Defendants with a copy of this memorandum and all related documents in the manner provided for in the Federal Rules for the service of a summons.

## IV.    PLAINTIFFS ARE ENTITLED TO DAMAGES, ATTORNEYS FEES, COSTS, AND ENFORCEMENT OF THE INJUNCTION

Assuming the Court agrees that the facts warrant holding Defendants in civil contempt, Plaintiffs are entitled to their damages resulting from the contempt, their attorneys' fees and related costs, as well as an appropriate order for enforcement of the Injunction.

Plaintiffs commenced this action to prevent Defendants from selling goods with the infringing REACTION and RXN trademarks because the sale of Defendants' infringing goods was harming Plaintiffs.  The sale of infringing goods not only potentially diverts sales away from Plaintiffs causing monetary damages, but perhaps more importantly "[b]ecause of the trademark's unique function in representing intangible assets such as reputation and good will" Defendants' sales of inferior quality goods, over which Plaintiffs have no control, irreparably harms Plaintiffs.  *Playboy Enterprises, Inc. v. Chuckleberry Pub. Inc.*, 486 F. Supp. 414 (S.D.N.Y. 1979), *final injunction granted*, 511 F.Supp. 486 (S.D.N.Y. 1981), *aff'd*, 687 F.2d 563 (2d Cir. 1982); *Omega Importing Corp. v. Petri--Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) ("if an infringer's product is of poor quality, or simply not worth the price, a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.").  Accordingly, Plaintiffs seek an Order from this Court directing the U.S. Marshall to enter Defendants' premises (with or without the assistance of Plaintiffs, as the Court may direct) to seize the infringing goods and materials.  Given the consistently duplicitous nature of Defendants' assurances that they have discontinued using the marks, Plaintiffs submit that such action is the only way to prevent Defendants from further flooding the market with substandard products bearing their marks.

Once a court finds a party in contempt, sanctions in the form of damages (as opposed to attorneys' fees and costs, as discussed below) are available without a finding of willfulness. Thus, though the facts demonstrate that Defendants have willfully violated the Injunction, such a finding is not a prerequisite to damages. *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 (2d Cir. 1989), *citing, Canterbury Belts Ltd. v. Lane Walker Rudkin*, Ltd., 869 F.2d 34, 39 (2d Cir. 1989) and *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 93 L. Ed. 599, 69 S. Ct. 497 (1949). "Monetary sanctions for civil contempt traditionally have been awarded to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience." *Id, citing Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56-57 (2d Cir.), *cert. denied*, 459 U.S. 832, 74 L. Ed. 2d 71, 103 S. Ct. 73 (1982).

With respect to an appropriate sanction to deter future disobedience, "the district judge, sitting in equity, is vested with wide discretion in fashioning a remedy." *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir.1979). With respect to Plaintiffs' damages, such sanctions are available even in the absence of a demonstrated injury, especially in the context of trademark infringement actions. "[U]nder a theory of unjust enrichment, a contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury, much less proof that any such injury 'approximated in amount the defendant's profits,'" *Manhattan Industries, quoting Monsanto Chem. Co. v. Perfect Fit Products Mfg. Co.*, 349 F.2d 389, 395 (2d Cir. 1965), *cert. denied*, 383 U.S. 942, 86 S. Ct. 1195, 16 L. Ed. 2d 206 (1966). This reasoning is consistent with the language and policies of the Lanham Act, which provide that a prevailing plaintiff is entitled, subject to the principles of equity, to the defendant's profits.

Thus, Plaintiffs are entitled to an award of Defendants' profits (as measured consistent with the provision of the Lanham Act) for sales of infringing goods made after entry of the Injunction. In this regard, the courts have long recognized that the difficulties a plaintiff faces in proving its damages resulting from trademark infringement do not act as a bar to recovery. As Professor McCarthy explains, "[b]ecause of the difficulties of proving actual diversion of sales, the courts often assumed or presumed that the infringer's profits consisted entirely of profits on sales that would have been made by the plaintiff but for the infringing actions." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:59 (2008).

Additionally, pursuant to paragraph 5 of the Injunction, "in the event that Defendants do not faithfully adhere to each of the provisions of this Consent Decree, Defendants acknowledge that Plaintiffs are entitled to additional monetary compensation, including (without limitation) for acts of infringement occurring prior to the date of this Consent Decree."

Because Defendants have failed to comply with paragraph 4E of the Injunction (requiring Defendants to provide Plaintiffs with an accounting of Defendants' sales), calculation of Plaintiffs' damages is as yet impossible. Accordingly, Plaintiffs additionally request an Order from the Court directing the U.S. Marshals to enter Defendants' premises and seize all pertinent books and records so that appropriate damages and profits may be calculated.

"Since the plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful."

*Vuitton et Fils S. A., citing, W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664-65 & n.5 (2d Cir. 1970) (reversing denial of fees). Given the facts of the case, a finding of willfulness is the only logical outcome. Even absent a finding of willfulness, under the explicit terms of the Injunction, Plaintiffs are entitled to their attorneys fees and all costs associated with enforcing this injunction. See Injunction at ¶ 5 which provides in pertinent part, "in the event that it becomes necessary for Plaintiffs to enforce the terms of this Consent Decree, Defendants agree and acknowledge that they shall be jointly responsible for all costs and fees (including, without limitation, reasonable compensation for the time of Plaintiffs' employees) incurred by Plaintiffs in enforcing this Consent Decree, in addition to any other damages to which Plaintiffs may be entitled pursuant to applicable law."

And finally, because Plaintiffs are still incurring fees and costs for which recovery is permitted, Plaintiffs request the right to make additional submissions, at the time and in the form the Court may direct, evidencing the full extent of their costs.

## V.    <u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs respectfully request that their motion for

contempt, together with the relief requests hereinabove, be granted in their entirety.

Dated: Scarsdale, New York                    Respectfully submitted,
      August 29, 2008

**LACKENBACH SIEGEL LLP**

By: _____
      Robert B. Golden (RG 6157)
      Attorneys for Plaintiffs
      One Chase Road
      Scarsdale, New York 10583
      (914) 723-4300
      (914) 723-4301 (fax)

# APPENDIX

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/08
```

*Ho Hlorstein's*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------- X | : | |
| KENNETH COLE PRODUCTIONS (LIC), INC. and KENNETH COLE PRODUCTION, INC. | : | |
| | : | Case No. 08-cv-5218-AKH |
| Plaintiff, | : | |
| | : | ECF CASE |
| v. | : | |
| | : | ~~JURY TRIAL DEMANDED~~ |
| REACTION and MATTHEW CHO, | : | |
| Defendant. | : | |
| ------------------------------------------- X | : | |

### ~~[PROPOSED]~~
### CONSENT JUDGMENT, ORDER, AND PERMANENT INJUNCTION

Plaintiffs, Kenneth Cole Productions (LIC), Inc. ("KCPL") and Kenneth Cole

Productions, Inc. ("KCP and collectively "Plaintiffs"), having filed and served a Summons and

Complaint in the above-captioned action against defendants Reaction and Matthew Cho

("Defendants") on June 6, 2008; and

The named Defendants, together with C&K Clothing Company, shall be referred to

collectively as Defendants.

Plaintiffs having served Defendants with the Summons and Complaint on June 11, 2008;

and

The parties having agreed to settle their dispute and this action by way of a Consent

Judgment, Order, and Permanent Injunction in the form set forth below;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.    This Court has jurisdiction over the subject matter; additionally, the Court has specified personal jurisdiction over the parties for the mattes at issue in this suit.

2.    Judgment on the issue of liability is hereby entered against Defendants, as follows:

A.    Plaintiffs and their licensees license, manufacture and/or sell a wide variety of high-quality clothing, footwear, luggage, handbags, small leather goods, eyewear, jewelry, fragrances, watches, related goods, and other items (the "Goods").

B.    The Goods are sold throughout the United States.

C.    In connection with its Goods and other products, KCPL is the owner of a family of "REACTION" trademarks, including REACTION, RXN, KENNETH COLE REACTION, REACTION KENNETH COLE, KENNETH COLE REACTION RXN, and REACTION KENNETH COLE (Stylized) trademarks (the "Reaction Trademarks") for use in connection with the Goods.

D.    KCP is, within certain categories of goods, KCPL's exclusive licensee for the Reaction Trademarks.

E.    KCP and certain of KCPL's licensees have been using the Reaction Trademarks continuously in connection with their products in interstate commerce since at least as early as 1994; as such the Reaction Trademarks are currently in use.

F.    In connection with the Reaction Trademarks, KCPL is the owner of the

following United States Trademark Registrations (the "Reaction

Registrations"):

| Trademark | Serial # | Reg. # | IC | Goods |
|---|---|---|---|---|
| REACTION | 75339869 | 2532363 | 9 | Eyeglasses |
| REACTION | 75339870 | 2189378 | 9 | Sunglasses |
| REACTION | 75108104 | 2345847 | 14, | Jewelry and Watches |
| | | | 25 | Clothing, namely, men's and women's socks and hosiery; men's neckwear; women's scarves; men's suits, sport-coats, dress slacks, casual slacks, jackets, coats, rainwear, dress shirts, knit shirts, woven sport-shirts, sweaters, denim jeans, underwear; women's suits, blouses, overcoats, rainwear, dress slacks, denim jeans, jackets, sweaters, underwear |
| REACTION | 75156743 | 2248481 | 25 | Footwear |
| REACTION | 75941836 | 2602004 | 35 | Retail store services featuring footwear, wearing apparel; luggage, handbags, small leather goods, business cases; eyewear; jewelry and watches; belts, scarves and neckwear; fragrances; accessories |
| REACTION | 75450061 | 2666727 | 18 | All purpose athletic bags, all purpose sport bags, attaché cases, briefcase-type cases, business card cases, calling card cases, credit card cases, document cases, key cases, overnight cases, toiletry cases sold empty, backpacks, baby backpacks, fanny packs, wrist packs, beach bags, book bags, school book bags, carry-on bags, clutch bags, diaper bags, duffel bags, leather shopping bags, mesh shopping bags, overnight bags, |

3

| Trademark | Serial # | Reg. # | IC | Goods |
|-----------|----------|--------|-----|-------|
| | | | | shoulder bags, textile shopping bags, tote bags, handbags, straps for handbags, travel bags, garment bags for travel, change purses, clutch purses, coin purses, key cases, key fobs (leather), knapsacks, luggage, straps of luggage and suitcases |
| KENNETH COLE REACTION | 78741595 | 3220801 | 14 | Jewelry, clocks and watches, watch straps and bracelets, key rings of precious metal, money clips of precious metal; wall clocks, table clocks, alarm clocks, clocks incorporating radios; decorative items for the home made of precious metal or coated therewith, namely, bowls, platters, serving trays, chargers, jugs, plates, mugs, vases, cache pots, ice buckets, canisters, pencil cups, letter openers, desk trays, serving trays, decorative trays, candlesticks, candelabras, candle holders, candle rings, candle snuffers, candle trays, decorative boxes, jewelry boxes, jewelry cases, picture frames, decorative stands, decorative pedestals, cigarette cases, cigarette boxes, cigarette holders, cigarette lighters, ashtrays, nutcrackers, coffee pots, coffee services, tea pots, tea services, tea balls, tea infusers, serviette rings, napkin rings; works of art made of precious metal or coated therewith, namely, busts, figurines, statues, statuettes, sculpture |
| KENNETH COLE REACTION | 75976921 | 2154344 | 9 | Sunglasses |
| KENNETH | 75975998 | 2068076 | 18 | Handbags, tote bags, clutch bags, |

| Trademark | Serial # | Reg. # | IC | Goods |
|---|---|---|---|---|
| COLE REACTION | | | | luggage, travelling bags, wallets, purses, coin purses, key cases, credit card cases and business card cases |
| KENNETH COLE REACTION | 74479246 | 1991610 | 25 | Footwear |
| KENNETH COLE REACTION | 75977562 | 2186930 | 25 | Clothing, namely, men's and women's socks and hosiery; men's neckwear; women's scarves; men's suits, sport-coats, dress slacks, casual slacks, jackets, coats, rainwear, dress shirts, knit shirts, woven sport-shirts, sweaters, denim jeans, underwear; women's suits, blouses, overcoats, rainwear, dress slacks, denim jeans, jackets, sweaters, underwear |
| KENNETH COLE REACTION | 75100283 | 2237071 | 9 | Eyeglasses |
| KENNETH COLE REACTION | 75426573 | 2698003 | 35 | Retail store services in the fields of footwear, wearing apparel, bags, accessories and related items |
| REACTION KENNETH COLE (STYLIZED) | 75599230 | 2594660 | 35 | Retail store services featuring footwear, wearing apparel; luggage, handbags, small leather goods, business cases; eyewear; jewelry and watches; belts, scarves and neckwear; fragrances; accessories |
| REACTION KENNETH COLE (STYLIZED) | 75978961 | 2362439 | 3, 25 | Cosmetics; skin soap; bath gel; bath salts; shampoo; non-medicated hair preparations; shaving cream, shaving balm; skin lotion; face powder; deodorants and antiperspirants; fragrances, namely, perfumes, colognes and toilet water<br><br>Coats, jackets, overcoats, rainwear |

| Trademark | Serial # | Reg. # | IC | Goods |
|-----------|----------|--------|-----|-------|
| | | | | and topcoats, suits, blazers, shirts, slacks, dresses, sweaters, jeans, t-shirts, sweatshirts, swim wear, shorts; underwear, loungewear, lingerie, robes and pajamas; neckwear, scarves, gloves, mittens, headwear, belts; footwear, socks and hosiery |

G.  Fifteen (15) of the Reaction Registrations are incontestable pursuant to 15 U.S.C. § 1065.

H.  Defendants' use of the "REACTON" and "RXN" trademarks (the "Infringing Marks"), on or in connection with the name of Defendants' business (the "Infringing Services") and/or Defendants' clothing and related products (the "Infringing Goods") infringes Plaintiffs' Trademark Registrations, in violation of Lanham Act §§ 32, 15 U.S.C. § 1114.

I.  Defendants' use of the Infringing Marks on or in connection with the name of the Infringing Services and/or the Infringing Goods infringes Plaintiffs' Trademarks, falsely designates the origin of the Infringing Goods and Services, falsely describes such goods and unfairly competes with Plaintiffs, all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125.

J.  Plaintiffs' Trademarks are famous and Defendants' conduct serves to dilute Plaintiffs' famous Trademarks, in violation of Lanham Act § 43(c), 15 U.S.C. § 1125(c).

K.    Defendants' infringement and dilution of Plaintiffs' Trademarks were willful.

L.    Defendants' conduct violates the provisions of New York Gen. Bus. Law § 368-d, 349 and 133 and constitutes trademark infringement and unfair competition under the common law of the State of New York.

3.    Defendants and their agents, officers, directors, servants, employees, their successors and assignees, and all others in active concert or participation with Defendants, including C&K Clothing Company and resellers and retailers of Defendants' Infringing Goods are immediately and permanently enjoined from directly or indirectly:

A.    Using Plaintiffs' Trademarks, the Infringing Trademarks, or any other marks or dresses which are similar to or are colorable imitations of Plaintiffs' Trademarks, alone or as a part of or together with any other designs, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design, in connection with the sale, offering for sale, advertising, exhibiting at trade or similar shows, distributing or promoting of Goods, all products related to the Goods, and/or any business engaged in the manufacture, importation, distribution, offer for sale, advertisement, promotion, and/or sale of Goods;

7

B.     Representing by words or conduct that Defendants' Infringing Goods and/or Infringing Services are authorized, sponsored, endorsed by, or otherwise connected with Plaintiffs;

C.     Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done, amounts to false designation of origin, false description or false representation of Defendants' Infringing Goods and/or Infringing Services, whereby wholesalers, retailers and/or consumers of such products are deceived into believing that Defendants' Infringing Goods and/or Infringing Services, or related goods or services, emanate from Plaintiffs, or from a company that is sponsored, authorized, or endorsed by or connected with Plaintiffs;

D.     Taking any action which is likely to put others in a position to sell or palm off the Defendants' Infringing Goods as the goods of Plaintiffs or to unfairly compete with Plaintiffs; and

E.     Otherwise unfairly competing with Plaintiffs or committing infringement of Plaintiffs' rights.

4.     Defendants are further Ordered to:

A.     Immediately deliver to Plaintiffs, under oath and for destruction, all clothing, labels, packaging, wrappers, receptacles, containers, advertisements, promotional materials, printing devices, molds, business

8

forms, catalogs, price sheets and/or all of the things in the possession,

custody, or control of Defendants, which are or can be used to create

and/or display the Infringing Marks and/or any name, mark or dress which

is similar to and/or a colorable imitation of Plaintiffs' Trademarks, alone

or together with any other suffix, prefix, word or words, trademark, service

mark, trade name, trade dress or other business or commercial designation

or any logo, symbol or design in connection with the manufacture,

distribution, sale, offer for sale, advertisement or promotion of

Defendants' clothing products and/or any clothing or footwear products

related thereto;

B.    Pursuant to 15 U.S.C. §1116(a), file with the Court and serve on Plaintiffs,

within thirty (30) days after the service on Defendants of this Consent

Judgment, Order, and Permanent Injunction a report in writing and under

oath, setting forth in detail the manner and form in which Defendants have

complied with the injunction;

C.    Pay to Plaintiffs twelve thousand five hundred dollars ($12,500), in the

following manner:

$2,500 upon or before execution by the parties, and $2,500 on or before

the first of each month, commencing with a payment on or before

September 1, 2008 and concluding with a payment on or before December

9

1, 2008. If Defendants fail to timely make any of the payments required by Consent Judgment, all remaining money owed shall become immediately due and owning.

D.    Immediately notify each of their past and present commercial associates, suppliers and customers, including manufacturers, wholesalers, and retailers, of this Consent Judgment, Order, and Permanent Injunction; and provide Defendants with copies of such notifications; and

E.    Immediately provide Plaintiffs with an accounting of all commercial associates, suppliers and customers, including manufacturers, wholesalers, and retailers, to whom products bearing the Reaction Trademarks were sold or who otherwise played any role whatsoever in such products, including quantities, dates of sale, and contact details.

5.    Provided Defendants faithfully adhere to each of the provisions of this Consent Decree, Plaintiffs have agreed to forego any monetary compensation for past acts of infringement other than that which is required by Paragraph 4 (c). However, in the event that Defendants do not faithfully adhere to each of the provisions of this Consent Decree, Defendants acknowledge that Plaintiffs are entitled to additional monetary compensation, including (without limitation) for acts of infringement occurring prior to the date of this Consent Decree. Moreover, in the event that it becomes necessary for Plaintiffs to enforce the terms of this Consent Decree,

FROM : CHO                    FAX NO. :12133851959          Aug. 04 2008 12:34AM  P1

Defendants agree and acknowledge that they shall be jointly responsible for all

costs and fees (including, without limitation, reasonable compensation for the

time of Plaintiffs' employees and attorneys fees) incurred by Plaintiffs in

enforcing this Consent Decree, in addition to any other damages to which

Plaintiffs may be entitled pursuant to applicable law.

6.     This Court shall retain jurisdiction of this action for the purpose of enabling

Plaintiffs to apply to the Court, at any time, for such further orders and directions

as may be necessary or appropriate for the interpretation or execution of any order

entered in this action, for the modification of any such order, for the enforcement

or compliance, therewith and for the punishment of any violations thereof.

Kenneth Cole Productions (LIC), Inc.                    Reaction

By: _____                          By: _____

Dated: 8/4/2008                                        Dated: 8 3 2008

Kenneth Cole Productions, Inc.                         Matthew Cho

By: _____                          

Dated: _____                       Dated: 8 3 2008

                SO ORDER:                    _____
                August        2008           Alvin K. Hellerstein, U.S.D.J.

                                   11

Defendants agree and acknowledge that they shall be jointly responsible for all

costs and fees (including, without limitation, reasonable compensation for the

time of Plaintiffs' employees and attorneys fees) incurred by Plaintiffs in

enforcing this Consent Decree, in addition to any other damages to which

Plaintiffs may be entitled pursuant to applicable law.

6.     This Court shall retain jurisdiction of this action for the purpose of enabling

Plaintiffs to apply to the Court, at any time, for such further orders and directions

as may be necessary or appropriate for the interpretation or execution of any order

entered in this action, for the modification of any such order, for the enforcement

or compliance, therewith and for the punishment of any violations thereof.


Kenneth Cole Productions (LIC), Inc.                Reaction

By: _____               By: _____

Dated: _____               Dated: ____8__3__2008_____


Kenneth Cole Productions, Inc.                     Matthew Cho

By: _David P. Edn_                          _____

Dated: __8-4-08__                           Dated: ____8__3__2008_____

                    SO OREDER:               _____
                    August 5, 2008           Alvin K. Hellerstein, U.S.D.J.

                              11